HILL (RINGENOLDUS as successor), Clerk, etc., Respondent, vs. AMERICAN SURETY COMPANY, imp., Appellant.

| 112 | 627 |
| 113 | ¹170 |
| 112 | 627 |
| 116 | ¹ 77 |
| 116 | ¹260 |

*December 19, 1901 — January 7, 1902.*

*Appeal: Findings of fact: Retrial of single issue: Record: Bill of exceptions: Evidence:* Res judicata: *Burden of proof: Custom: Trial by court: Immaterial errors.*

1. The conclusion of the trial court upon a question of fact will not be disturbed on appeal unless the preponderance of the evidence against it is so overwhelming as to convince this court, either by itself or in connection with other things appearing in the record, that the court below erroneously applied rules of law, or through mistake, prejudice, or other cause did not give it proper consideration.

2. On appeal a judgment was reversed and the cause remanded with directions to consider and decide a single question upon the competent evidence already received and such additional evidence as might be offered. *Held,* that the bill of exceptions on the first appeal was a part of the record and should have been sent up to this court on appeal from the judgment entered on the second hearing.

3. Upon such second hearing it was not necessary that the evidence incorporated into the bill of exceptions be read to the court in order to entitle it to consideration as bearing on the question to be decided; nor, where depositions had been incorporated into the bill, was it necessary to show that the witnesses themselves could not be produced at the time of the second hearing.

4. The bill of exceptions, stipulated and certified to contain all the evidence, was admissible to prove what evidence had been introduced on the former hearing.

5. In an action on the bond of an assignee for the benefit of creditors to recover damages by reason of his failure to insure the assigned property on which there had been, at the time of the assignment, insurance more than sufficient to satisfy all the proved claims, it was held that a *prima facie* case had been established and that the record did not disclose evidence to overcome it, but nevertheless the cause was remanded with directions to the trial court to decide, upon evidence already received and such additional evidence as might be offered, whether the assignee's negligence in making no efforts to obtain any insurance caused less injury to the plaintiff than the amount of the unpaid claims and, if so, how much less. *Held*, that the burden of showing noninjury was upon the defendants, and that all other questions in the case were *res judicatæ*.

6. Defendants having attempted to prove a uniform custom against insurance of property in the hands of assignees under circumstances like those in this case, plaintiff proved without objection many instances (more than 100) where such insurance had been obtained on assigned property in the same place and at about the time in question, but objection was made to the testimony of certain witnesses, who had been assignees, showing three or four other instances of such insurance. *Held*, that even if the testimony so objected to should have been excluded under the general rule that a custom cannot be proved by a few specific instances, yet, in view of the numerous instances proved without objection, such testimony could not have, affected the court's conclusion on the question, and its admission was therefore an immaterial error.

7. On appeal the judgment in a case tried by the court will not be reversed merely because of the admission of improper evidence; but if it is apparent that the error necessarily affected the court's conclusion, it may be ground for reversal.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

After the decision of this case which is reported in 107 Wis. 19, a further hearing was had in the circuit court, in which the plaintiff added to his former evidence the testimony of a certain insurance agent, who testified to the ob-

taining of insurance by assignees and receivers during the years 1893 and 1894 to a considerable number; also that of four men who had been assignees in one or more assignments in Milwaukee during the same period, and who had themselves obtained insurance. The defendant offered the evidence of a very large number of insurance agents to the effect that it had not been customary with them during those years to write insurance for assignees and receivers, and especially so under circumstances more or less resembling those in the present case. Those witnesses made various qualifications as to the uniformity of that custom under variant circumstances. The court found, among other things, that " the testimony and evidence adduced on the part of the defendants does not show that by ordinary diligence the said assignee could not have procured the consent of the insurance companies then carrying the said risk to a transfer of the existing policies to him as such assignee, or could not have obtained new insurance for the protection of the said creditors;" also that, had he exercised due diligence, " he would have been able to have kept or procured fire insurance upon said property prior to the date of the said fire on the 7th day of July, 1894, to an amount exceeding the amount of such unpaid claims of said creditors." Accordingly, judgment was rendered in favor of the plaintiff for the total amount due the creditors, together with interest from the time when the receiver's accounts were settled, May 29, 1897, as a date at least prior to which such insurance could have been collected. From that judgment the defendant *American Surety Company* appeals.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Noyes.* They contended, *inter alia*, that in the first instance the burden of proving the assignee's negligence, and that such negligence was the cause of loss to the plaintiff, was on plaintiff. He was not relieved of the ultimate burden by proving a *prima*

*facie* case. *Atkinson v. Goodrich T. Co.* 69 Wis. 5, 17, and cases cited; *Heinemann v. Heard,* 62 N. Y. 448, 455; *Lockwood v. C. & N. W. R. Co.* 55 Wis. 63–65; *Nichols v. Munsel,* 115 Mass. 567; Jones, Ev. § 175; *Tarbox v. Eastern S. Co.* 50 Me. 345; *Nitro-Glycerine Case,* 15 Wall. 537.

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *Charles Quarles.*

DODGE, J.  On the former appeal to this court all issues but one were decided, and the decision, right or wrong, must control the present aspect of the case.  It is *res adjudicata.*  Upon that hearing it was decided that the duty of Winterhalter as assignee included due diligence to procure insurance; that he had made no efforts whatever so to do, and was guilty of negligence; and that the circumstances were such that in all reasonable probability due diligence on his part would have been effective to have obtained insurance sufficient at least to have protected the unpaid amounts due creditors,— some $22,300,— and that thereby the plaintiff had established a case of breach of the bond, and *prima facie* damages up to the amount of the claims, to overcome which the burden was upon the defendants to establish " either that the assignee's negligence was not injurious at all, or, if at all, for what part of the loss *prima facie* resulting therefrom; either that by due diligence he could not have obtained any insurance, or not enough to protect plaintiff from the whole of the loss."  The cause was therefore remanded, in order that the court " should consider and decide; upon the competent evidence already received and such additional evidence as may be offered, upon the single question whether the assignee's negligence in making no efforts to obtain any insurance caused less injury to the plaintiff than the amount of the unpaid claims, and, if so, how much less."  The court below, after hearing all such additional evidence, has resolved that question in

the negative, and has found that the defendant has not proved that such negligence was innocuous, under the burden of proof decided to rest upon it by this court. After a careful review of all the evidence brought up by the bill of exceptions settled upon the last hearing, and of the evidence so far as it appears in this court from the printed case on the former appeal, we cannot say that this conclusion of the trial court is not justified. It is not necessary to reiterate the reasons for the rule so often stated that this court will not reverse the conclusion of the court below upon questions of fact unless the preponderance against the same is so overwhelming as to convince us, either by itself or in connection with other things appearing in the record, that the court erroneously applied rules of law, or through mistake, prejudice, or other cause did not give it proper consideration. *Wyss v. Grunert*, 108 Wis. 38; *Remington v. Eastern R. Co.* 109 Wis. 154, 159. Of this we can find nothing in the present record.

In this connection it should be noted that, either through error of the circuit court clerk or misdirection of the appellant, the so-called record does not include the bill of exceptions showing the evidence which was taken prior to the first appeal. That bill of exceptions, when settled, became as absolutely a part of the record as the pleadings themselves (*Mead v. Walker*, 20 Wis. 518), and the failure of the clerk to transmit it upon the present appeal was a clear breach of his duty. The inclusion in the present bill of exceptions of parts thereof which were read aloud to the court upon the last hearing of the case is mere work of supererogation. That entire evidence was in the case and present for consideration, under the direction of this court. We have endeavored to supply the omission, so far as possible, by consulting the " case " and briefs filed on the former appeal.

Some specific assignments of error are urged upon our attention: First. That the plaintiff was allowed to read to

the court the testimony given by deposition of certain witnesses which had been received upon the former trial and included in the former bill of exceptions, on the ground that such depositions were not admissible without showing that the witnesses themselves could not, at the time of the last hearing, be produced. This assignment is founded upon a confusion of ideas. It was not necessary for the plaintiff to read a single word of the evidence taken on the former trial. As we have already said, it was all before the court. The effect of reading any of the evidence was no more than to call the attention of the court thereto, as its attention might have been called to a paragraph of the pleadings. The depositions in question had been received without valid objection, and were part of the evidence upon which the circuit court was directed to proceed in considering the single question remitted to it. The same remarks are applicable to the argument that the evidence of witnesses cannot be read from a bill of exceptions without a showing of their subsequent death.

A further assignment of error is predicated upon an objection to the plaintiff's reading to the court from the bill of exceptions settled upon the former appeal, instead of from the reporter's minutes. The only question before the court was what evidence was introduced upon that former hearing. A bill of exceptions had been settled, which both parties had stipulated contained all the evidence. Under the ruling in *Wilson v. Noonan*, 35 Wis. 321, that document was certainly evidence — and the best evidence — of what those witnesses testified to. The reporter's certified minutes are no higher grade of evidence than the testimony of the reporter, or any other witness who was present upon the former trial, as to what transpired. Sec. 4141, Stats. 1898, gives to the certified minutes of the reporter the same force as his own testimony that the evidence therein recorded was given, but no more. It is unnecessary to consider

whether, if the testimony of the reporter or of other wit-
nesses, or the former's certificate to his minutes, might have
shown that some evidence in addition to that contained in
the bill of exceptions was in fact given, that fact would be
admissible, for the defendant offered no such evidence. Suf-
fice it to say that the bill of exceptions was certainly ad-
missible to prove what evidence had been introduced.

Several assignments of error which are urged by appellant
at much length and with much citation of authority in sup-
port of trite and well-recognized rules of law certainly indi-
cate a degree of confusion in counsel's mind as to the situa-
tion of the case upon this last hearing. Among such assign-
ments are the fourth, to the effect that specific instances
are not sufficient to prove a general custom; the sixth, that
the ultimate burden of proof was on the plaintiff, and the
court erred in holding that the burden was on the defendant
to disprove liability; also the seventh, to the effect that the
court erred in guessing at the amount of insurance that
could have been obtained; and the eighth, that a uniform
custom of assignees to insure, and knowledge thereof by
both parties, was essential to import into the bond an agree-
ment that the assignee should write insurance. Substan-
tially every one of these positions was wholly immaterial at
the stage of the case presented upon the hearing in the cir-
cuit court. They had all been decided finally for the pres-
ent action. The plaintiff had been held by this court to
have been under the duty of due diligence in the care of
the property coming to him as assignee. It had also been
shown and decided by this court that such due diligence in-
cluded efforts to obtain insurance, and that the omission
thereof constituted a breach of the bond. It was proved
that such efforts would probably have succeeded in obtain-
ing insurance to an amount at least equal to the claims of
the creditors,— in such degree of probability, at least, as to
prove *prima facie* that such amount of damage had been

suffered by reason of the established negligence of the assignee. This made the plaintiff's case complete. Upon it he was entitled to judgment for the full amount of the claims. As the case went back, plaintiff had no occasion to prove custom or usage. He had no occasion to prove how much insurance could have been obtained, or how much damage he had suffered by reason of the neglect to insure. It was no longer an open question whether a custom had been proved with sufficient certainty to charge the assignee with diligence upon the subject of insurance, or his sureties with liability for his neglect therein. The one question was whether the defendant could prove that the assignee's negligence had not injured the plaintiff, and thus the circuit court ruled, and was right in so doing. If, as appellant now seems to contend, the evidence was only sufficient to support mere guess or conjecture as to amount of insurance obtainable, that justifies judgment for the full amount, for under the terms of the remand the court could not fix any less amount upon mere guess.

In order to prove noninjury, the defendant undertook to show a uniform custom against insurance of property in the hands of assignees under circumstances like those here presented. He produced very many witnesses, some of whom testified to an absolute custom against it, others of whom testified to the possibility of obtaining insurance under various circumstances. He had already introduced upon the former hearing evidence of insurance agents going so far as to deny that property was ever insured in the hands of assignees. In this situation, the plaintiff, presumably in attack upon the attempt of the defendant to prove such uniform custom, offered evidence, both by cross-examination and by the direct testimony of witnesses called by him, of a very large number of instances where insurance had been obtained in Milwaukee by assignees, receivers, and sheriffs at about the time of the Enger-Kress Company assignment.

To much of this class of testimony defendant objected, and by his fourth and fifth assignments of error raises the question of the admissibility of the testimony of five witnesses who had themselves been assignees, and who testified to obtaining insurance in that capacity.

Of course, the rule is too well settled to need more than iteration that this court will not reverse a judgment in a case heard by the court without a jury merely because improper evidence has been admitted. *Duncan v. Duncan,* 111 Wis. 75. Nevertheless, if it is apparent that the error in admitting the evidence necessarily affected the court's conclusion, that may be ground for reversal. *Kelly v. Crawford, ante,* p. 368. This testimony of specific instances of the issue of insurance policies to people in situations more or less similar to that of this assignee could have had no effect except as such instances were similar enough and numerous enough to have shown that the asserted custom not to insure was not so uniform but that there was a reasonable probability that the assignee might have obtained some insurance. We, however, find other witnesses testifying to many such instances. One of them, called by the defendant, details some fifteen or more cases of assignments and receiverships within about two years in Milwaukee in which his concern alone placed insurance on the assigned property, and testifies to the issue of a very large number of such policies of insurance, certainly more than a hundred, and perhaps twice that number. That same witness, and others whose testimony is not now complained of, proved the fact of issue of some of the same insurance testified to by the five witnesses above mentioned. So that there was depending upon the testimony of such witnesses but three or four instances of insurance to assignees, while a very large number of instances had been proved without objection. The only effect of such testimony, if considered by the court at all, was to show that the alleged custom had in fact been

subject to so frequent exception as not to be uniform and not to force the conclusion that it would not have been broken again at Winterhalter's diligent solicitation. The exact number of instances of breach was not the material consideration, but merely the fact of frequent breach. The three or four instances more or less resting upon this objected testimony could not have been significant or weighty in view of the many instances otherwise proved. So that, even if the general rule that a custom cannot be proved by a few specific instances is so applicable as to have rendered the admission of the testimony of the five assignees improper, we are persuaded that such testimony could have had no appreciable effect in convincing the court that the defendant had failed to prove that Winterhalter could not have obtained insurance had he made properly diligent effort so to do, and was not prejudicial.

The single finding by the trial court that the evidence does not establish that the assignee Winterhalter could not, by ordinary diligence, have either procured transfer of old or issue of new insurance to an amount equal to the $22,385.89 of creditors' unsatisfied claims, having been reached upon sufficient evidence, and no prejudicial error having intervened, the conclusions of law and the judgment for plaintiff necessarily result from the law and the facts previously decided by this court.

*By the Court.*— Judgment affirmed.