ESTATE OF SOUTHARD: SOUTHARD and another, Appellants, vs. WEST, Executor, Respondent.

*April 4—May 10, 1932.*

*Robert N. Nelson* of Madison, for the appellants.

For the respondent there was a brief by *Leo P. Lownik,* attorney, and *Brindley & Brewer* of counsel, all of Richland Center, and oral argument by *Mr. E. E. Brindley* and *Mr. Lownik.*

FAIRCHILD, J. Two questions are raised upon this appeal: First, is the order of the county court against the great weight and clear preponderance of the evidence? Second, was prejudicial error committed by the court in admitting the testimony of respondent's wife of communications had personally with deceased?

In considering the first question it is necessary to review the evidence which was before the court. In August, 1930, William West was desirous that a loan be made to George Waddell for $1,500. He applied to the testatrix to make the loan. Testatrix was a competent business woman, managing her own affairs with the assistance of Charles Brace, assistant cashier of the Farmers' Bank of Lone Rock. The testatrix called upon Mr. Brace at his office a short time before the mortgage was drawn, and informed him that she desired a loan of $200 to complete the sum of $1,500 for the proposed loan to Waddell. Mr. Brace testified that "she said her brother [respondent] was making a loan to Mr. and Mrs. Waddell; that she wanted to borrow $200 so that the loan could be completed, and I fixed her up with the loan. She said that the other parties would be in and take care of the rest of it—the mortgage. It was under Mr. West's [respondent] instructions I drew the mortgage. She wasn't there at the time the mortgage was drawn. She just asked at that time if she could make a loan of $200 for a short time, and explained that the mortgage was to be drawn. That is what she wanted the $200 for. . . . I do not personally know where the $1,300 came from. I had nothing to do with the $1,300."

Testatrix directed that the check for $200 be payable to William West. Mr. Brace testified that he considered testatrix a good business woman, and that from his observation of her and knowledge of her business experience she would not be the sort who would neglect to look after papers of

that sort if she thought she owned them. Under respondent's direction the mortgage and note were drawn by Mr. Brace, with respondent and his wife as mortgagees and payees. The mortgage was immediately recorded. The testimony discloses that testatrix was frequently at the bank after the time of the execution of this mortgage, but made no further reference to the note or mortgage. She paid the note of $200 when due.

It is contended that this evidence is not enough to warrant the inference that the money was intended as a gift to the respondent, but we think this contention cannot be sustained. The evidence that testatrix was a keen and active business woman, who looked after her affairs with energy and care, is significant. So also is the fact that she was not in the habit of making loans through the agency of respondent; also the fact that from the date the mortgage was executed until her death, she made no demand for the mortgage and note, showed no interest in the transaction, although the mortgage was recorded in the name of the respondent, and made no reference whatever concerning the transaction to Mr. Brace, who had been her agent for eight or ten years.

It is our conclusion that the persuasiveness of the competent evidence sustains the finding that there was a gift. Nothing occurred creating any suspicion of wrongdoing or overreaching on the part of respondent. Testatrix, who was respondent's sister, was disposing of her estate in a very generous way, giving large amounts to charity, and had asked him to become executor of her will, under which he was not a beneficiary. She delivered into his possession $1,500 because she knew he desired to make a loan to his friend. She told her agent of her brother's purpose. Her agent drew the mortgage, making it payable to respondent and his wife. The mortgage was immediately placed upon

record. The brother was placed in possession of the money. The evidence establishes the fact of a completed gift, an intention to give and delivery of possession to the donee.

As to the second question to be considered, the wife of respondent was called as a witness and permitted to testify to having asked testatrix concerning the gift, "why she did it," and testatrix said, "I wanted you to have it." Objection was made to the competency of the witness to testify to a communication had by her personally with the deceased. The court overruled the objection, stating as a reason for the ruling that the witness was not a party to this action and that consequently sec. 325.16, Stats., did not apply to prohibit her testimony. This ruling was erroneous. Sec. 325.16 reads:

"No party *or person in his own behalf or interest,* and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person. . . ."

The portion italicised was added to the section by sec. 17, ch. 523, Laws of 1927.

It was the position of the respondent that the $1,500 was a gift to him and his wife. From her testimony it is evident that this was also her position. Hence the testimony of the wife in support of the claim that a gift was intended was the testimony of a person in her own behalf or interest, and falls literally within the prohibition of the statute as now in force.

It is generally stated to be the rule in this state that, "where a cause is tried by the court without a jury, the admission of incompetent evidence is not available as error on appeal unless some proposition essential to sustain the judgment has no evidence to support it other than such in-

competent evidence." *Hannah v. Knuth,* 161 Wis. 467, 154 N. W. 985. The cases stating this to be the rule are too numerous to cite without unduly extending this opinion. The proposition seems to have become so well settled that there is absolutely no discussion of the principle which establishes the rule. In several of the cases, however, a limitation upon this doctrine is set forth and the rationale of the rule disclosed. In *Hilton v. Rahr,* 161 Wis. 619, 155 N. W. 116, the court, after declining to determine whether certain evidence admitted was erroneously admitted, stated:

"It is believed, therefore, that the case is governed by the rule that, where there is competent evidence sufficient to support a finding, this court will presume, in the absence of an affirmative showing to the contrary, that that finding rests upon the competent evidence solely."

In *Hill v. American Surety Co.* 112 Wis. 627, 88 N. W. 642, it is stated:

"Of course, the rule is too well settled to need more than iteration that this court will not reverse a judgment in a case heard by the court without a jury merely because improper evidence has been admitted. *Duncan v. Duncan,* 111 Wis. 75, 86 N. W. 562. Nevertheless, if it is apparent that the error in admitting the evidence necessarily affected the court's conclusion, that may be ground for reversal." See, also, *Kelley v. Crawford,* 112 Wis. 368, 88 N. W. 296.

It thus appears that the rule, which has come to be stated without qualification, that errors in admitting evidence will not be considered where the trial was before the court and there is competent evidence to support the findings, is founded upon a strong presumption that the ultimate determination rested solely upon the competent evidence. It is a fact, of which notice may be taken, that in the course of a trial before the court evidence is frequently taken over or subject to objection, without any intended finality in the ruling, and the presumption exists, even where an objection

is overruled, that the incompetent evidence was not considered by the court in disposing of the issues.

The incompetent evidence given in this case by the wife of respondent concerning the conversation with deceased above referred to was not controlling evidence in the sense that its presence or elimination would affect the result. It was reassuring, but under the rule discussed, where other and sufficient evidence moves the court to its conclusion the decision will not be disturbed because of the erroneous admission of this evidence.

*By the Court.*—Order affirmed.

WICKHEM, J. (*dissenting*). I concede that there is sufficient evidence, apart from the evidence erroneously admitted, to sustain the findings of the trial court. It must also be conceded that this court has given utterance to expressions such as are cited in the majority opinion, to the effect that the admission of incompetent evidence is not available as error on appeal, where the trial has been before the court, unless some proposition essential to sustain the judgment has no evidence to support it other than such incompetent evidence. However, it appears to me that this case falls within the limitation upon the doctrine set forth in *Hilton v. Rahr,* 161 Wis. 619, 155 N. W. 116.

Upon objection having been interposed to the competency of respondent's wife to testify to transactions or communications with deceased, the court said: "I think I will have to overrule your objection. She is not a party to this proceeding. Subject to the objection, you may answer." A later motion to strike out the testimony of the witness was likewise overruled or denied, the court saying: "Overruled on the ground the witness is not a party to the proceeding." These rulings indicate that it was the considered judgment of the court that the witness was competent and the evidence admissible. This erroneous ruling introduced into the rec-

ord the only testimony which directly or certainly characterized this transaction as a gift. The balance of the testimony was entirely circumstantial and measurably weaker in its probative tendencies.

Under these circumstances I think it apparent from the record that the error necessarily affected the conclusions of the court.

For the foregoing reasons I respectfully dissent.

I am authorized to state that Mr. Justice OWEN concurs in this dissent.